# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| BEAU C. VAUGHAN, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | No. 1:14-00077 |
| v. | ) | Senior Judge Haynes |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## M E M O R A N D U M

Movant, Beau C. Vaughan, filed this action under 28 U.S.C. § 2255 seeking to set aside his conviction for conspiracy to distribute or possess with intent to distribute 100 kilograms or more of marijuana, for which he received a sentence of 300 months. Movant asserts claims for denial of effective assistance of counsel prior to trial, at trial, at sentencing and on appeal. Movant asserts that his status as a career offender was improperly based upon an illegal state sentence to which his trial counsel failed to object. The specifics of Movant's ineffective assistance of counsel claims are: (1) his counsel's failure to argue in his motion to suppress that after the initial search of Movant's vehicle failed to produce anything, Movant's continued detention and "second search" of the vehicle were unlawful; (2) his counsel's failure to argue that information provided by the confidential informant ("CI") about Movant's drug trafficking was insufficient to support probable cause to arrest Movant; (3) his counsel's failure to prepare a theory of defense at trial and to object to hearsay testimony that contradicted counsel's theory that the government would be unable to establish the amount of marijuana alleged in the indictment or that a single conspiracy existed as to that amount; (4) his counsel's failure to prepare for sentencing by failing to discover and object that one of Movant's prior convictions used to deem him a career offender was the result of an illegal state

sentence; (5) his counsel's failure to provide discovery to Movant and to communicate with him about the strengths and weaknesses of his case that deprived Movant of the opportunity to engage in informed plea negotiations and led to his rejection of the government's plea offer under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure with a recommended sentence of twelve years; (6) his counsel's failure to be prepared at trial for testimony regarding "KY," a customer of Movant's, that was used to establish the amount of marijuana in the charged offense; and (7) his counsel's failure to interview and investigate for available impeachment evidence against Brook Anderson, who testified for the government. Movant also asserts that his sentence was in excess of the maximum authorized by law and that his sentence is subject to collateral attack where one of the prior convictions used to sentence him as a career offender was the result of an illegal state sentence that should be vacated.

On August 11, 2011, a federal jury convicted Movant of conspiracy to distribute or possess with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Criminal No. 1:10-cr-00006, Docket Entry No. 51). At the January 13, 2012 sentencing hearing, the Court determined that Movant's total offense level was 37, his criminal history category was VI and his guideline range was three hundred sixty (360) months to life imprisonment. Id., Docket Entry No. 77 at 1. The Court sentenced Movant to three hundred (300) months imprisonment and eight (8) years of supervised release. Id., Docket Entry No. 76 at 2-3.

Movant's trial counsel timely appealed Movant's conviction that was affirmed by the Sixth Circuit on January 16, 2013. United States v. Vaughan, 512 F. App'x 459 (6th Cir. 2013). On June 24, 2013, the Supreme Court denied Movant's petition for certiorari on direct appeal. (Criminal No. 1:10-cr-00006, Docket Entry No. 89).

An evidentiary hearing in a Section 2255 proceeding is not required if the record conclusively establishes that a movant is not entitled to relief. Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999); Rule 8, Rules Governing Section 2255 Proceedings for the United States District Courts. Thus, an evidentiary hearing is not required if "the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Arredondo, 178 F.3d at 782 (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). Also, "[w]here . . . the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial." Id.

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court must consider the "answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Such materials may include "letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge," as well as affidavits. Rule 7(b), Rules Gov'g § 2255 Proceedings. Where an evidentiary hearing is appropriate, "the hearing conducted by the court, . . . must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." Smith v. United States, 348 F.3d 345, 550 (6th Cir. 2003) (quoting United States v. Todaro, 982 F.2d 1025, 1030 (6th Cir. 1993)). Upon consideration of Movant's filings, Respondent's response, and the underlying factual record, the Court finds, as discussed infra, that an evidentiary hearing is required on Movant's claim about his counsel's disclosure of plea offers.

For relief under § 2255, a prisoner must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the Court was without jurisdiction to impose such

sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion asserting constitutional error, a movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993)). To prevail on a § 2255 motion asserting non-constitutional error, the movant must show a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." Id. (quoting United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990) citing Hill v. United States, 368 U.S. 424, 428 (1962) (internal quotation marks omitted)).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel during their criminal proceedings, Missouri v. Frye, --- U.S. ----, 132 S. Ct. 1399, 1404 (2012), and this right applies to "all 'critical' stages of the criminal proceedings." Montejo v. Louisiana, 556 U.S. 778, 786 (2009) (citation omitted). To establish ineffective assistance of counsel, Movant must demonstrate that his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a

4

duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 691.

In Strickland, the Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance . . . [, as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

To establish that counsel's performance was deficient under Strickland, a movant "must identify acts that were 'outside the wide range of professionally competent assistance.'" Smith v. United States, 348 F.3d 545, 551 (6th Cir. 2003) (quoting Strickland, 466 U.S. at 690). In evaluating whether a movant has received counsel that falls short of what the Sixth Amendment guarantees to a defendant, "[i]t will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986) (quoting Strickland, 466 U.S. at 690).

In evaluating the prejudice prong, courts must be mindful that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."

5

466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. (citation omitted). Rather, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams v. Taylor, 529 U.S. 362, 391 (2000) (quoting Strickland, 466 U.S. at 694).

Movant asserts that his counsel provided ineffective assistance of counsel by failing to raise the distinction between the first and second search of the Defendant's vehicle. Citing United States v. Fields, No. 3:09cr029(1) & (2), 2010 WL 1667766 (S.D. Ohio April 23, 2010), Movant asserts that counsel failed to recognize and argue that after the initial search of Movant's vehicle failed to produce anything illegal the continued detention of Movant and second search of his vehicle was unlawful.

The facts established at the suppression hearing are set forth as follows:

At the suppression hearing, Trooper Michael Kilpatrick testified that Agent Darryl Richardson of the Tennessee Bureau of Investigation informed him that Vaughan would be delivering a quantity of marijuana to an O'Charley's parking lot and directed him to develop probable cause to stop Vaughan's vehicle. Trooper Kilpatrick saw the vehicle approaching the O'Charley's and observed that Vaughan was not wearing a seatbelt. Trooper Kilpatrick turned into the parking lot behind Vaughan's vehicle, activated his lights, and initiated the stop. When he approached the driver's side of the vehicle, Trooper Kilpatrick noticed that Vaughan's eyes were bloodshot and smelled the odor of burnt marijuana coming from the vehicle. Shortly after Trooper Kilpatrick stopped Vaughan's vehicle, Trooper Wayne Dunkleman arrived with his drug-detection dog. Trooper Dunkleman also smelled the odor of burnt marijuana coming from Vaughan's vehicle.

6

Trooper Kilpatrick asked Vaughan to get out of the vehicle and issued him a citation for not wearing his seatbelt and not having proof of insurance. Vaughan denied consent to search his vehicle . . . .

Vaughan, 512 F. App'x at 460.

Trooper Kilpatrick then informed Vaughan that there would be a canine search of Vaughan's vehicle and inquired if narcotics were in the vehicle. (Criminal No. 1:10-cr-00006, Docket Entry No. 29, Memorandum at 2). Vaughan stated that he had approximately $15,000 in the vehicle, but no drugs. Id. Within approximately ten minutes of the traffic stop, Rock, a certified narcotics detection canine, alerted to the driver's side door of Vaughan's vehicle. Id. at 3. Trooper Kilpatrick then placed Vaughan in the back of his patrol car while the officers searched his vehicle. Id.

Trooper Dunkleman searched the inside of Vaughant's vehicle, recovering only cash. Id. Rock then conducted a canine search of the back exterior of the truck and alerted to the toolbox in the back of Vaughan's truck. Id.; Docket Entry No. 25 at 20-21, 59-60. Within a box inside the toolbox, troopers recovered additional cash, dryer sheets, trash bags, and some marijuana residue. Id. at 3. The troopers searched Defendant's vehicle again and recovered a suspected drug ledger, airline tickets to Dallas, Texas, and a rental car agreement from McAllen, Texas. Id. at 4.

In summarizing the facts in his motion to suppress, Movant's counsel stated, in part, that:

[Kilpatrick] places Mr. Vaughan in the back of his patrol car – with no way for Vaughan to exit – at 10:28:18. Shortly thereafter, at 10:28:50, Dunkelman concludes his search of Vaughan's truck and announces the "truck's pretty clean" except for the cash in the door panel, previously described by Mr. Vaughan.

Kilpatrick then instructs Dunkelman to run his "drug dog" on the toolbox in the bed of Vaughan's pickup. At 10:30:00, the dog purportedly "alerts" on the toolbox. The troopers obtain the keys to the toolbox from Mr. Vaughan, who is still locked up in the back of Trooper Kilpatrick's car (Vaughan is not allowed out of the back of the car until 11:45). The search of the toolbox reveals more cash in a red shoebox, at 10:31:45.

**Trooper Kilpatrick then begins a second search** of the truck's interior at 10:33:08. He begins examining papers and a ledger found in Mr. Vaughan's truck. He concludes the ledger is a "drug ledger" and informs Agent Richardson, in a phone call at 10:36, that "there's no dope... but we're gonna keep him here."

Id., Docket Entry No. 14 at 3-4 (emphasis added).

Movant's counsel argued:

**The search of Mr. Vaughan's vehicle**, while arguably supported by the troopers' purported smelling an odor of marijuana and the drug dog's supposed "hit" (assuming arguendo the Court believes those two events actually occurred), **still did not include the troopers' seizure and reading of Mr. Vaughan's journal, logbook, or other documents once their search of the truck for drugs proved futile.**

Id. at 6 (emphasis added).

In his supplemental memorandum, Movant's counsel argued that:

a. Trooper Dunkelman searched the truck and found nothing but Mr. Vaughan's money – and no pot (10:28:23);

b. The "drug dog" allegedly hit on the toolbox in the back of Mr. Vaughan's truck, where more **cash was found.....but still no drugs were recovered** (10:31:15);

c. The troopers nevertheless **decided to search Mr. Vaughan's vehicle again**, this time removing and examining a so-called "drug ledger," trucking logbook, and airline and rental car documents from a recent trip to Texas (10:33:45-10:35:28);

d. No tractor-trailer or cache of drugs was ever recovered, despite sending officers around to search storage units and homes. Nevertheless Mr. Vaughan was never released from the patrol car until Agent Richardson arrived on the scene almost two hours after the stop, and an hour and fifteen minutes after Mr. Vaughan was secured in the back of the patrol car. Mr. Vaughan was never given the option of simply leaving on his own from O'Charley's, but was driven to the agents' offices, where he gave numerous incriminating statements. . . .

Id., Docket Entry No. 26 at 3 (emphasis added).

Citing United States v. Howard, 621 F.3d 433, 454-55 (6th Cir. 2010) and United States v.

Perez, 440 F.3d 363, 375 (6th Cir. 2006), this Court concluded that once the certified drug dog's

alert established probable cause to search the vehicle, the officers could "search the entire truck, including the tool box." (Criminal No. 1:10-cr-00006, Docket Entry No. 29 at 9-10). The Sixth Circuit affirmed, stating:

> [T]he officers had probable cause for Vaughan's arrest when they placed him in the patrol car. . . . When they placed Vaughan in the patrol car, the officers had information that Vaughan would be delivering a quantity of marijuana to the O'Charley's parking lot, they had smelled the odor of burnt marijuana coming from his vehicle, and the drug-detection dog had alerted to his vehicle's door.

Vaughan, 512 F. App'x at 461.

Movant's argument that his trial counsel "failed to recognize . . . once the initial search of Vaughan's vehicle proved fruitless, whatever probable cause existed prior had dissipated," (Civil No. 1:14-cv-00077, Docket Entry No. 1 at 1), and that his trial counsel failed "to recognize the legal issue raised by continuing to detain the Defendant after the search of his vehicle produced nothing illegal," id. at 8, is without merit. First, the cited excerpts from trial counsel's suppression motion reflect that trial counsel did challenge the dissipation of probable cause after the initial search and Movant's continued detention. Second, the officers' search of the vehicle was one continuos search, not two distinct searches. As the officers established probable cause to search the vehicle for drugs, the officers could "inspect any item in that vehicle that could contain drugs, whether or not the item belonged to the driver, a passenger, or someone else claiming an expectation of privacy in its contents." Perez, 440 F.3d at 375.

Movant's reliance on United States v. Fields, No. 3:09cr029(1) & (2), 2010 WL 1667766 (S.D. Ohio April 23, 2010) is also unavailing. Fields is an unpublished Ohio district court case and is not binding on this Court. Further, Fields is not factually similar to the stop and search involving Movant's vehicle. In Fields, an officer stopped a vehicle with two occupants for a traffic violation.

Id. at *1, 4-5.  The officer arrested the driver for failing to obey the officer's command to stop the vehicle and placed the passenger in handcuffs because of the passenger's furtive movements.  Id. at *2, 6.  As the officer led the driver to his police car, the officer smelled marijuana on the driver.  Id. at *6.  After an officer searched the passenger compartment of the vehicle and failed to find any contraband, a canine was brought to the scene and alerted to the vehicle.  Id. at *2.  Officers ultimately discovered crack and powdered cocaine behind the dashboard.  Id.

The district court found that the post-stop detention of the driver comported with the Fourth Amendment because the officer had probable cause to arrest the driver for violating the city ordinance.  Id. at *6.  As to the passenger, the court found that the passenger's detention after the non-fruitful search of the vehicle's passenger compartment violated his rights under the Fourth Amendment.  Id. at *7.  The court concluded that assuming that the passenger's furtive movements established reasonable suspicion to detain the passenger, "that suspicion was almost immediately eliminated" after the search of the passenger compartment failed to produce any evidence of criminal conduct.  Id. at *6.  The court stated that the driver driving on a suspended driver's license did not create reasonable suspicion to believe that the passenger was involved in criminal conduct.  Id.  The court further noted that the government failed to explain how the odor of marijuana emanating from the driver established reasonable suspicion to believe that the passenger was involved in a controlled substances offense, particularly since there was not any evidence that either the passenger or the interior of the vehicle smelled of marijuana.  Id.  The court also concluded that because the government failed to introduce evidence establishing that the canine was properly trained or was reliable in drug detection it was unable to conclude that the dog's reaction to the vehicle established probable cause to believe there were drugs in the vehicle.  Id. at *7.

Here, Movant was the driver and owner of the truck that was searched, and both officers detected the odor of marijuana coming from inside Movant's truck. Further, the drug detection dog that alerted to the presence of a controlled substance in the vehicle where drugs were later found was properly trained to do so. Thus, Movant's counsel's failure to cite Fields was not deficient performance.

Movant also argues that his counsel should have argued that the information provided by the CI about Movant's drug trafficking was insufficient to support a finding of probable cause for the arrest and that the smell of marijuana did not sufficiently corroborate the CI's reliability or basis of knowledge. The CI's information, however, was just one factor used in establishing probable cause to arrest Movant. Although Agent Richardson had not previously used the CI as an informant or made control buys with him, Agent Richardson was able to corroborate the CI's information as to Movant's vehicles, places of employment, where Movant frequented and where Movant's girlfriend resided, and he also received positive feedback from local law enforcement officers as to Movant's involvement in large amounts of marijuana. (Criminal No. 1:10-cr-00006, Docket Entry No. 25 at 86-87, 89-91, 113). Also, on the day of Movant's arrest, in corroboration with the CI's information, Movant was observed leaving his girlfriend's house at approximately 10:00 a.m., carrying a black duffel bag and driving to O'Charley's where he was to meet the CI. Id. at 124-25. Officers then stopped Movant for not wearing a seat belt. Id. at 8, 11.

As the Sixth Circuit found, "[T]he officers had probable cause for Vaughan's arrest when they placed him in the patrol car. . . . [T]he officers had information that Vaughan would be delivering a quantity of marijuana to the O'Charley's parking lot, they had smelled the odor of burnt marijuana coming from his vehicle, and the drug-detection dog had alerted to his vehicle's door."

11

Vaughan, 512 F. App'x at 461 (citing Florida v. Royer, 460 U.S. 491, 506 (1983) ("stating that a positive result by a drug-sniffing dog 'would have resulted in [the defendant's] justifiable arrest on probable cause'")). The evidence found inside Movant's vehicle included $15,000 in cash; a commercial driver's logbook; airline and rental car documents for Movant's trip to McAllen, Texas, a source city for illegal drugs; dryer sheets; trash bags; marijuana residue; and a suspected drug ledger that further supported the CI's statements to Agent Richardson that Movant was distributing large amounts of marijuana. Thus, the Court concludes that Movant's argument on this issue is without merit.

Next, Movant asserts that his counsel failed to prepare a theory of defense at trial and to object to hearsay testimony regarding the weight of the marijuana that contradicted counsel's theory that the government would be unable to establish the amount of marijuana alleged in the indictment or that a single conspiracy existed as to that amount. Yet, Movant fails to articulate any theory of defense that his counsel should have presented at trial or to cite the specific testimony to which counsel should have objected.

At trial Agent Richardson testified as to Movant's post-Miranda statements where Movant stated that he was the largest marijuana dealer in Maury County, that the cash found in his truck was from the sale of marijuana, that he had gone to McAllen, Texas to find another marijuana supply source, and that he bought a tractor trailer to haul marijuana from Texas because he believed that he could make more money hauling drugs back to Tennessee for the drug cartel than selling marijuana on his own. (Criminal No. 1:10-cr-00006, Docket Entry No. 80 at 31, 37-38, 41). The ledger seized from Movant's truck contained entries totaling over 400 pounds. Id. at 35-36, 43-47. Following his confession, Movant consented to a search of his residence. Id. at 50. During that search, agents

12

found marijuana, a digital postal scale, cellophane wrappings that each could contain approximately 40 to 50 pounds of marijuana, cash and more drug ledgers. Id. at 54-61.

Based upon the substantial evidence of Movant's guilt presented at trial, Movant fails to establish that his counsel's performance at trial was deficient or that the result of the trial would have been different but for his counsel's performance.

Next, Movant contends that counsel failed to object that one of Movant's prior convictions used to deem him a career offender was the result of an illegal state sentence. Movant argues that under Tenn. Rule Crim. P. 32(c)(3)(C)[1] his July 8, 1997 state sentence for his convictions for robbery and possession of a prohibited weapon[2], id., Docket Entry No. 84, Presentence Report ("PSR"), at ¶ 36, should have been consecutive to, rather than concurrent with, his prior state sentence on April 4, 1997 for simple assault[3], id, at ¶ 35, because at the time he was arrested for the robbery charge he was on bond for the assault charge. Movant argues that had his counsel properly prepared and

---

[1]Tennessee Rule of Criminal Procedure 32(c)(3)(C) provides:

*Mandatory Consecutive Sentences.* When a defendant is convicted of multiple offenses from one trial or when the defendant has additional sentences not yet fully served as the result of convictions in the same or other courts and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply:

. . .

(C) to a sentence for a felony committed while the defendant was released on bail and the defendant is convicted of both offenses[.]

[2]Movant was originally charged with aggravated robbery. (Criminal No. 1:10-cr-00006, Docket Entry No. 84, at ¶ 36).

[3]Movant was originally charged with aggravated assault. (Criminal No. 1:10-cr-00006, Docket Entry No. 84, at ¶ 35).

investigated Movant's prior record, Movant's counsel would have been able to have the state conviction for robbery vacated pursuant to Tenn. R. Crim. P. 36.1 and, thus, Movant would not have qualified as a career offender and therefore would have been subjected to a lower guidelines range at sentencing.

Movant relies on Tenn. R. Crim. P. 36.1 (2013) that states, in pertinent part, as follows:

> (a) Either the defendant or the state may, at any time, seek the correction of an illegal sentence by filing a motion to correct an illegal sentence in the trial court in which the judgment of conviction was entered. For purposes of this rule, an illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute.
>
> . . . .
>
> (c)(3) If the illegal sentence was entered pursuant to a plea agreement, the court shall determine whether the illegal provision was a material component of the plea agreement. If so, the court shall give the defendant an opportunity to withdraw his or her plea. If the defendant chooses to withdraw his or her plea, the court shall file an order stating its finding that the illegal provision was a material component of the plea agreement, stating that the defendant withdraws his or her plea, and reinstating the original charge against the defendant. If the defendant does not withdraw his or her plea, the court shall enter an amended uniform judgment document setting forth the correct sentence.

Id.[4]

---

[4] Effective July 1, 2016, Tenn. R. Crim. P. 36.1 was amended, in part, as follows:

> (a)(1) Either the defendant or the state may seek to correct an illegal sentence by filing a motion to correct an illegal sentence in the trial court in which the judgment of conviction was entered. Except for a motion filed by the state pursuant to subdivision (d) of this rule, a motion to correct an illegal sentence must be filed before the sentence set forth in the judgment order expires. . . .

Yet, the adoption of Tenn. Rule Crim. P. 36.1 did not become effective until July 1, 2013, one and one half years after Movant's sentencing.[5] Thus, Movant's counsel was incapable of trying to have the state conviction for robbery vacated under that rule.

Moreover, Movant's counsel was incapable of challenging the robbery as illegal on constitutional grounds. In Custis v. United States, 511 U.S. 485, 496-97 (1994), "the Supreme Court held that prior state convictions used to enhance a sentence under the Armed Career Criminal Act ('ACCA'), 18 U.S.C. § 924(e), may not be collaterally challenged at federal sentencing proceedings." Watt v. United States, 162 F. App'x 486, 493 (6th Cir. 2006). The sole exception to this general rule is that a defendant may collaterally challenge those convictions at sentencing if they were obtained when counsel was not available or provided, in violation of Gideon v. Wainwright, 372 U.S. 335 (1963). Id. "The Gideon exception applies only if the defendant shows that he was completely unrepresented in the state proceedings, not merely that his state counsel rendered ineffective assistance." Id. at 493 n.1 (citing Custis, 511 U.S. at 496). "No other constitutional challenge to a prior conviction may be raised in the sentencing forum." Daniels v. United States, 532 U.S. 374, 382 (2001). The Sixth Circuit "has recognized that Custis applies not just to enhancements under the Armed Career Criminal Act, but also to enhancements under the sentencing guidelines." United States v. Aguilar-Diaz, 626 F.3d 265, 269 (6th Cir. 2010) (citing United States v. Bonds, 48 F.3d 184, 186-87 (6th Cir.1995)).

---

[5]"Prior to the adoption of this Rule, defendants generally had to seek relief from illegal sentences through habeas corpus or post-conviction proceedings." Lee v. State, No. W201400994CCAR3CO, 2015 WL 2330063, at *2 (Tenn. Crim. App. May 13, 2015), appeal denied (May 9, 2016) (citing Cantrell v. Easterling, 346 S.W.3d 445, 453, 453 n.7 (Tenn.2011)).

Thus, a "defendant must attack his state convictions in the state courts; if he does so successfully, 'he may then apply [in a federal habeas petition or § 2255 motion] for reopening of any federal sentence enhanced by the state' conviction." Watt, 162 F. App'x at 493 (quoting Custis, 511 U.S. at 497). "If, however, a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse." Daniels, 532 U.S. at 382.

According to the PSR, Movant was represented by counsel when he was convicted for robbery and possession of a prohibited weapon. (Criminal No. 1:10-cr-00006, Docket Entry No. 84, Presentence Report ("PSR"), at ¶ 36). Thus, according to Custis, Movant's counsel could not have collaterally attacked the validity of Movant's state sentence as being unconstitutional at his federal sentencing, and, therefore, Movant's 1997 state conviction for robbery was properly used to enhance his sentence. Accordingly, Movant's claim that counsel rendered ineffective assistance of counsel by failing to object that Movant's robbery conviction qualified him as a career offender is without merit.

Next, Movant asserts that counsel failed to provide discovery to him and that counsel did not effectively communicate to him about his case that caused him to reject the government's plea offer. Citing Movant's counsel's affidavit and emails between Respondent and Movant's counsel, Respondent contends that based upon this evidence the Court should conclude that Movant's counsel provided discovery to Movant and discussed plea offers with him. Respondent also asserts that it never offered a sentence of twelve years under Rule 11(c)(1)(C). In reply, Movant argues that the

cited emails conflict with Movant's counsel's affidavit that he discussed Respondent's 15 year plea

offer contained in those emails.

> Where the prejudice alleged is that ineffective advice led to a plea offer's rejection,
>
> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, 132 S.Ct. 1376, 1385 (2012).

In his affidavit, Movant's counsel, John Colley, states the following:

> 3. On more than one occasion in 2011, Mr. Vaughan and I discussed resolving his federal charges with a guilty plea, as well as the Government's plea offers.
>
> 4. On July 25, 2011, Mr. Vaughan authorized me to offer an open plea, if the Government would only allow him to appeal his search and seizure issues. The Government refused.
>
> 5. I shared all discovery with Mr. Vaughan. The overwhelming majority of discovery was evidence physically taken from Mr. Vaughan, whether rental receipts, cash, airline ticket stubs, a "drug ledger", marijuana wrapping, etc. I printed out the jail phone calls submitted to me by the Government, and shared them with Mr. Vaughan.
>
> 6. I am unaware of any discovery that was not shared with Mr. Vaughan prior to the end of plea negotiations on July 26, 2011.

(Civil No. 1:14-cv-00077; Docket Entry No. 6-3, Colley Affidavit at ¶¶ 3-6).

Emails between Respondent and Colley concerning plea discussions reflect that on March

3, 2011 at 10:19 a.m., Colley informed Respondent that after speaking with Movant, Movant was

"agreeable to a sentence in the 5+ year range." (Docket Entry No. 6-2 at 2). At 11:34 a.m. that same

morning, Respondent responded:

John,

I think we discussed prior to the suppression hearing that Mr. Vaughn has two prior felony convictions for either a crime of violence or a controlled substance offense. Due to those convictions, he is a Career Offender under the U.S.S.G. Additionally, if Mr. Vaughan is not willing to plead guilty to the pending charge, we file an 851 Information alleging his prior felony drug conviction.

If he is a Career Offender and the 851 Information is not filed, his base offense level would be 34 (due to the maximum sentence of 40 years) and his Criminal History would be Category VI. Assuming a three-level reduction for acceptance of responsibility if he pleads guilty in a timely fashion, his Guidelines' range would be 188-235 months. If the 851 Information is filed, that would increase the mandatory minimum from five to ten years and increase the maximum penalty from 40 years to life imprisonment. Therefore, his base offense level as a Career Offender would become 37 and his Guidelines range would increase to 262-327 months, assuming a three-level reduction for timely acceptance of responsibility.

Due to Mr. Vaughan's criminal history and the amount of marijuana he distributed, we can't agree to a sentence in the range of five years. If he is interested in a plea agreement which would result in a sentence of 15 years - which would be below his Guidelines range, I expect I could get approval for that from my supervisor. If he is not interested in a sentence in that range, please let me know and we can ask then court to set a trial date.

If you want to discuss any of this, please give me a call at 736-5975.

Regards,
Brent

Id. at 1-2.

On March 3, 2011, at 12:01 p.m., Colley responded, "Let's get a trial date. I would like the name and number of the contact person to view the physical evidence as soon as possible." Id. at 1. At 12:16 p.m. that same day, Respondent responded, "Just so I am clear, Mr. Vaughan is not going to plead guilty and intends to proceed to trial? If that is the case, then we will file the 851 Information." Id. Twenty-nine minutes later at 12:45 p.m., Colley responded, "Yes, Mr. Vaughan intends to go to trial rather than plead and take 15." Id.

18

On July 22, 2011 at 11:17 a.m., Respondent emailed Colley a draft transcript of jail calls that it planned to use along with playing the jail call recordings at trial. Id. at 3. Respondent also inquired if Movant intended to go to trial and whether he objected to the transcripts. Id. On July 25, 2016, at 6:14 p.m., Colley responded, "Mr Vaughan is seriously considering pleading open if the Government will consent to a Rule 11 (a)(2) appeal of the Court's ruling on our suppression motion. Will it?" Id. At 11:01 p.m. that night, Respondent rejected Colley's offer, stating, "If you need another day to discuss with Mr. Vaughan whether he'd enter an open plea without that agreement, please let me know." Id. On July 26, 2011 at 7:12 a.m., Colley responded, "No, we' ll try it. End of discussions." Id.

As to the discovery claim, Movant does not provide any details or specify the nature of the discovery materials that his counsel allegedly failed to provide him. Movant does not allege that he requested the discovery, how often he requested it, what the discovery materials contain, or why such materials would have influenced his decision to plead guilty. In his affidavit, Colley states that he shared all discovery with Movant. The overwhelming majority of discovery was evidence physically taken from Movant's truck and residence. See Criminal No. 1:10-cr-00006, Docket Entry No. 50, Exhibit and Witness List. Movant fails to cite any specific discovery that was not provided to him. "Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief." Rodriguez v. Trombley, No. 2:06-CV-11795, 2010 WL 120222, at *7 (E.D. Mich. Jan. 8, 2010) (citing Workman v. Bell, 178 F.3d 759, 771 (6th Cir.1998)).

Accordingly, the Court concludes that Movant's conclusory claim regarding discovery is without merit as it fails to provide a basis for the Court to conclude that counsel's representation fell

below an objective standard of reasonableness or there is a reasonable probability that, but for the alleged error, the result of the proceedings would have been different.

As to Movant's claim that Colley failed to communicate effectively with him that caused him to reject Respondent's plea offer, Movant argues that the timing between the March 3, 2011 emails demonstrate that with "[Movant] being in custody at that time, it is highly unlikely that [Respondent's] 15 year offer was ever conveyed to him prior to trial counsel's terse rejection of the offer." (Civil No. 1:14-cv-00077, Docket Entry No. 7 at 2). Movant argues that "the timing of the emails about the 15 year offer made by the government[] raises serious doubt as to whether this particular offer and notice of consequences of not accepting the offer could have been conveyed to Mr. Vaughan prior to their rejection by trial counsel." Id. at 3.

Colley attests that "[o]n more than one occasion in 2011, Mr. Vaughan and I discussed resolving his federal charges with a guilty plea, as well as the Government's plea offers." (Docket Entry No. 6-3 at ¶ 3). Yet, the affidavit is short on specifics. Given the ambiguity created from the timing between the March 3, 2011 emails, the Court concludes that an evidentiary hearing is necessary to resolve whether Movant's counsel effectively communicated Respondent's 15 year plea offer and the consequences of rejecting the offer.

Next, Movant contends that counsel failed to be prepared at trial for testimony regarding "KY," a customer of Movant's, that was used to establish the requisite weight for the indicted offense. Yet, drug ledgers, containing several individuals' names and amounts, were seized from Movant's truck and residence. (Criminal No. 1:10-cr-00006, Docket Entry No. 80 at 35-36, 44, 46-47). The Court upheld the seizures of the ledgers, despite Movant's counsel's attempt to suppress them, and admitted them into evidence. On one page of one of the ledgers, was a notation "KY, Josh

Pendleton," and listed an address in Sacramento, Kentucky. Id. at 104. The initials "KY" were listed in several of the ledgers. Id. Separate entries next to "KY" totaled alone 499 pounds. Id. at 46-47. The ledger also had a reference to pallets of brick, referring to pounds of compressed marijuana. Id. at 49.

Packaging wrappings, containing marijuana residue, were also discovered at Movant's residence. Id. at 58. Movant stated that the wrappings could contain between 40-50 pounds of marijuana. Id. at 59-60. Police seized 24 plastic wrappings. Id. at 60-61. Agent Richardson testified that if 20 wrappings each contained 40 pounds of marijuana then that would equal 800 pounds or approximately 363 kilograms of marijuana. Id. at 92. Agent Richardson testified as to one ledger seized from Movant's residence as follows:

> Q. Would you please go back just a second to 11-M. There at the bottom is written 339 at 100 equals 33,900, and 178 at 150 equals 26,700. Does that have any significance based upon your conversation with the defendant?
>
> A. It does. The defendant told me that he would try to make a hundred dollars per pound. I guess depending who it was, he might charge them 150. In this case, it's 339 at a hundred dollars, his profit was $33,900. In the other case, he charged the guy 750 per se, if he got marijuana for 600. This profit on this one was 178 pounds at 150. His profit was $26,700.

Id. at 75.

The record reflects that there was sufficient evidence establishing the requisite weight of the offense from the ledgers, the physical evidence seized at Movant's residence and Movant's admissions. Movant's counsel filed a suppression motion that the Court denied. Movant fails to show that his counsel's performance was deficient.

Movant next asserts that counsel failed to interview and investigate for available impeachment evidence against Brook Anderson. Yet, Movant does not identify any alleged evidence

that his counsel could have discovered and used to impeach Anderson. Accordingly, this claim is without merit.

Movant also generally asserts that his sentence was in excess of the maximum authorized by law. Yet, Movant fails to cite any argument in support. In any event, adopting the PSR, the Court determined that Movant's guideline range was 360 months to life. Id., Docket Entry No. 77 at 1; Docket Entry No. 84 at 20. The Court sentenced Movant to 300 months of imprisonment. Accordingly, this claim is without merit.

Lastly, Movant argues that his sentence is subject to collateral attack where one of the prior convictions used to sentence him as a career offender was the result of an illegal state sentence that should be vacated. The Supreme Court has held that a movant cannot use § 2255 as a vehicle to attack his prior state convictions that were used to enhance his federal sentence. Daniels, 532 U.S. at 378-79; Brown v. United States, 73 F. App'x 875, 876 (6th Cir. 2003). "If . . . a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack . . . then that defendant is without recourse. The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255." Daniels, 532 U.S. at 382. Accordingly, Movant is not entitled to relief under § 2255 on this claim.

An appropriate Order is filed herewith.

**ENTERED** this the _12th_ day of December, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge